UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

CINDY MUSTONEN,

Plaintiff,

v.

CAROLYN W. COLVIN, Commissioner of Social Security,

Defendant.

No. CV-12-3127-JTR

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR AN IMMEDIATE AWARD OF BENEFITS

BEFORE THE COURT are cross-Motions for Summary Judgment. ECF No. 21, 23. Attorney D. James Tree represents Cindy Mustonen (Plaintiff); Special Assistant United States Attorney John C. Lamont represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment.

**JURISDICTION**

On July 12, 2005, Plaintiff filed an application for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income (SSI) payments. Tr. 19; 150. In both applications, Plaintiff alleged disability beginning September 5, 2004. Tr. 19; 150. The claim was denied initially and on reconsideration and she requested a hearing before an administrative law judge (ALJ). Tr. 19; 33-85; 675-95. A hearing was held on May 14, 2008, in the Dalles, Oregon. Tr. 744-78.

At the hearing, vocational expert Kathryn Heatherly, and Plaintiff, who was represented by counsel, appeared and testified. Tr. 744-778. ALJ Riley J. Atkins presided. Tr. 744. The ALJ denied benefits on October 1, 2008. Tr. 54-67.

The Appeals Council vacated the decision and remanded the case on July 15, 2009. Tr. 87-89. The Appeals Council ordered the ALJ to further evaluate Plaintiff's subjective complaints of painful headaches and provide a proper credibility analysis for evaluating her headache symptoms, and give "further consideration" to Plaintiff's maximum RFC. Tr. 88. Finally, the Appeals Council ordered the ALJ to "obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base." Tr. 88.

The second hearing in front of ALJ Atkins was held on October 6, 2010. Tr. 777-98. Plaintiff, who was represented by counsel, testified. Tr. 784- 97. Vocational expert Richard Keough was present, but the ALJ did not call him to testify. Tr. 782. The ALJ again denied benefits on November 10, 2010. Tr. 19-32. The Appeals Council denied review. Tr. 8-10. The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF THE CASE**

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here. At the time of the second administrative hearing, Plaintiff was 54 years old and living alone in a single mobile home. Tr. 790-92. Plaintiff dropped out of high school, obtained a GED and took some college courses. Tr. 748.

Plaintiff's past work included home health aide, housekeeper and fruit sorter. Tr. 772. In her application, Plaintiff stated that she stopped working because she must nap during the day or she is too fatigued to function. Tr. 155. She reported that she is very anxious when she is around people, she has a hard time hearing, she is a "nervous wreck," and she has frequent bouts of diarrhea. Tr.

155.

In 1997, a CT scan revealed a tumor in Plaintiff's brain that was described as a "small, densely calcified mass." Tr. 24; 446-47; 485. In January, 2008, Plaintiff sought treatment after a head trauma, which was causing her pain and headache. Tr. 24; 446-47. A CT scan revealed that Plaintiff's tumor had grown slightly, and the neurosurgeon recommended re-testing every two years. Tr. 24.

At the first hearing, Plaintiff testified that she has emotional problems, hearing problems, and frequent headaches. Tr. 749. Two years later, at the second administrative hearing, Plaintiff testified that she had problems with irritable bowel syndrome and anxiety when around other people. Tr. 787-88. She said she has frequent headaches, but the prescribed Vicodin leaves her feeling "over-medicated," so she simply lies down until the headache recedes. Tr. 794-95. Plaintiff testified that the headaches last between one and three hours. Tr. 795. Plaintiff also testified that she has difficulty hearing, and she wears one hearing aid. She explained she does not wear two, because the second one makes her ear itchy and she hears about the same if she is wearing one or two hearing aids. Tr. 796.

Plaintiff also said that sometimes she "sees" her deceased parents, and she testified that on occasion, "they talk to me." Tr. 790. She described a violent childhood, and said she has frequent nightmares about her past. Tr. 789-90. Plaintiff testified that a couple of times per week, she feels so poorly – mentally and physically – that she is unable to leave her bed. Tr. 792. She said she is unable to handle many people in a store, and she sometimes leaves and returns later. Tr. 793. At the second hearing, Plaintiff said she experiences thoughts of suicide. Tr. 793.

**STANDARD OF REVIEW**

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed de novo. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin*., 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed de novo, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the Commissioner's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); see *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-94 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(I-v), 416.920(a)(4)(I-v).

## ADMINISTRATIVE DECISION

At step one, ALJ Atkins found that Plaintiff had not engaged in substantial gainful activity since September 5, 2004. Tr. 22. At step two, he found Plaintiff had the severe impairments of "depression with anxiety, also referred to as a schizoaffective disorder of a depressive type, as well as a personality disorder, and a hearing loss." Tr. 22. At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equal one of the listed impairments in 20 C.F.R., Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). Tr. 25. The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work with the following limitations:

> The hearing deficit experienced by the claimant precludes work where the whispered word or communication is required, or in an

> environment with loud background noise, such as a factory. Also excluded is work around hazards, such as working at unprotected heights or around machinery with exposed moving parts. … Finally, ready availability of a restroom facility is required.

Tr. 28-29. At step four, the ALJ found that Plaintiff is unable to perform past relevant work. Tr. 30. The ALJ found that the testimony of vocational expert Kathryn Heatherly from the first hearing "may be used as there has been no change in the severe impairments, all important factors, and in particular, no change in the residual functional capacity." Tr. 31. The ALJ relied upon this testimony in concluding that notwithstanding Plaintiff's nonexertional limitations, jobs exist in the national economy that Plaintiff can perform. Tr. 31. At step five, the ALJ concluded that considering Plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that Plaintiff can perform, such as motel cleaner housekeeper and small products assembler. Tr. 31. The ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act. Tr. 31.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends that the ALJ erred by (1) finding Plaintiff was not credible; (2) failing to address and properly reject opinions from several medical providers; and (3) failing to comply with the Appeals Council remand order. ECF No. 21 at 3.

## DISCUSSION

### A. Credibility

Plaintiff contends that the ALJ erred by finding Plaintiff only partially credible. ECF No. 21 at 17. The ALJ is responsible for determining credibility. *Andrews*, 53 F.3d at 1039. Unless affirmative evidence exists indicating that the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony

must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). The ALJ's findings must be supported by specific, cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998), quoting *Lester*, 81 F.3d at 834. If objective medical evidence exists of an underlying impairment, the ALJ may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. *See Bunnell v. Sullivan*, 947 F.2d 341, 347-48 (9th Cir. 1991).

To determine whether the claimant's testimony regarding the severity of the symptoms is credible, the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *See, e.g., Fair v. Bowen, 885 F.2d 597, 602-04 (9th Cir. 1989)*; *Bunnell*, 947 F.2d at 346-47.

In this case, the ALJ's findings regarding credibility consist of the boilerplate statement that Plaintiff's claims regarding the "intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Tr. 29. Curiously, the ALJ follows that paragraph with a discussion of the weight he afforded to medical provider Steven Woolpert, M.S. Tr. 29.

Following the medical evidence paragraph, the ALJ noted he considered Plaintiff's inconsistent statements in determining her RFC. Tr. 30. Specifically, the ALJ stated that Plaintiff's testimony at the 2010 hearing was inconsistent with the medical records and her 2008 hearing testimony. Tr. 30. The ALJ provided

three specific examples: (1) in the 2010 hearing, the Plaintiff claimed she experienced visual and auditory hallucinations, but Plaintiff "specifically denied" experiencing visual and auditory hallucinations in a visit with her mental health provider on July 7, 2010; (2) in the 2010 hearing, Plaintiff claimed she had suicidal thoughts, but had previously denied this to "to a number of treating sources;" and (3) Plaintiff's "testimony at the first hearing that she requires medical marijuana for her appetite [is] in contrast to her current testimony that medical marijuana is for treating irritable bowel syndrome." Tr. 30.

The ALJ's first reason for discounting Plaintiff's credibility is not supported by the record. The chart notes from July 7, 2010, reveal Kari Heistand, M.D., examined Plaintiff, who indicated that her hallucinations were diminishing with a new dosage of medication:

> [A]uditory hallucinations of foreboding music have decreased in frequency from daily to about once or twice per week and have decreased in severity from frightening music to just the sensation that a song she hears gets stuck in her head and is not frightening to her since increasing her risperidone.

Tr. 610. The entry is consistent with Plaintiff's testimony that she previously experienced frequent auditory and visual hallucinations. The ALJ's conclusion that Plaintiff "specifically denied" hallucinations overlooks the facts reflected in the chart note that the new medication dosage was effective in controlling Plaintiff's daily hallucinations. As such, the record does not support this reason for finding Plaintiff not credible.

Next, the ALJ asserted that Plaintiff's testimony changed regarding whether she experienced suicidal thoughts. A change in intensity of suicidal thoughts is not a legally valid reason upon which to find a mentally impaired individual not credible. Waxing and waning symptoms do not preclude a finding of disability. *Reddick*, 157 F.3d at 724. "[I]t is inherent in psychotic illnesses that periods of

remission will occur," and such remission does not mean that the disability has ceased. *Miller v. Heckler*, 756 F.2d 679, 681 n.2 (8th Cir. 1985) (*quoting Dreste v. Heckler*, 741 F.2d 224, 226 n.2 (8th Cir. 1984). "[O]ne characteristic of mental illness is the presence of occasional symptom-free periods." *Andler v. Chater*, 100 F.3d 1389, 1393 (8th Cir. 1996); *see Poulin v. Bowen*, 260 U.S. App. D.C. 142, 817 F.2d 865, 875 (D.C. Cir. 1987). The course of mental illness can be "extremely difficult to predict," and remissions are of uncertain duration and marked by the impending possibility of relapse. *Andler*, 100 F.3d at 1393. As a result, given the episodic nature of a mental illness, the ALJ improperly relied upon Plaintiff's 2010 testimony that she recently had experienced thoughts of suicide as a reason to diminish her credibility.

Finally, the ALJ found that between her testimony in 2008 and 2010, Plaintiff provided inconsistent statements about why she needed medical marijuana. Tr. 30. The ALJ noted that on May 14, 2008, Plaintiff testified that she used medical marijuana to stimulate her appetite, and on October 6, 2010, Plaintiff testified that she used marijuana to ease symptoms associated with irritable bowel syndrome. Tr. 30.

A chart note from May 3, 2007, signed by Thomas O. Orvald, M.D., of the THCF Medical Clinics, indicates Plaintiff had low back pain and leg stiffness, as well as GI bleeding, pain, and urgency related to urination. Tr. 505. Dr. Orvald listed Plaintiff's "debilitating medical condition from previous physicians" as "IBS" (Irritable Bowel Syndrome) and pancreatitis. Tr. 506.[1]

---

[1] Plaintiff testified at each hearing about different medical conditions that necessitated medical marijuana, but it was apparent the ALJ believed neither: "It appears Ms. Mustonen has managed to obtain a prescription for a substance she has otherwise abused her entire adult life." Tr. 28. Significantly, the ALJ found

The record reveals that in each administrative hearing, Plaintiff identified a different medical condition that required treatment with marijuana. Plaintiff's recent testimony that she required marijuana for her irritable bowel syndrome is supported by the chart notes from her prescribing doctor. Tr. 506. Moreover, medical evidence exists that marijuana may alleviate a variety of symptoms, including nausea, vomiting, symptoms associated with hepatitis C, severe muscle spasms associated with multiple sclerosis, epilepsy, glaucoma, Crohn's disease and Some forms of intractable pain. See Rev. Code Wash. (RCW) § 69.51A.005(1).[2]

Thus, because medical marijuana can be used to treat a variety of symptoms, the court cannot conclude with certainty that Plaintiff's testimony about why she needed it was false at one or both hearings. Considering Plaintiff's complicated medical condition and the voluminous record, this single remaining circumstance is not a persuasive reason to deny credibility. The analysis in the record does not

---

Plaintiff's marijuana use was not a material factor in reaching a determination of disability. Tr. 27.

[2]The Purpose and Intent section introduction to the medical marijuana statute in Washington State provide:

> The legislature finds that:
>
> (a) There is medical evidence that some patients with terminal or debilitating medical conditions may, under their health care professional's care, benefit from the medical use of cannabis. Some of the conditions for which cannabis appears to be beneficial include, but are not limited to:
> (i) Nausea, vomiting, and cachexia associated with cancer, HIV-positive status, AIDS, hepatitis C, anorexia, and their treatments;
> (ii) Severe muscle spasms associated with multiple sclerosis, epilepsy, and other seizure and spasticity disorders;
> (iii) Acute or chronic glaucoma;
> (iv) Crohn's disease; and
> (v) Some forms of intractable pain.

establish "clear and convincing" reasons supported by substantial evidence. See *Lester*, 81 F.3d at 834. The ALJ erred by discrediting Plaintiff's allegations related to the severity of her symptoms.

**B. Medical Opinions**

Plaintiff argues that the ALJ erred by failing to consider the opinions from Kari Heistand, M.D., Phillip Rodenberger, M.D., Kimberly Humann, M.D., E.G. Tupper, M.D., and Mark B. Whitehill, Ph.D. ECF No. 21 at 7-11. The Defendant responds that the ALJ's failure to specifically address these opinions was harmless error because the determination of disability is solely within the province of the ALJ and because the limitations are reflected in Plaintiff's RFC. ECF No. 23 at 10-15. The Defendant is incorrect on both counts.

As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Lester*, 81 F.3d at 830. Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Id.* Where the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

Moreover, in disability benefits cases, physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability - the claimant's ability to perform work. *Reddick*, 157 F.3d at 725. An ALJ is not bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability, but the ALJ cannot reject the opinions without providing clear and convincing reasons. *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993). As such, a treating physician's opinion on disability, even if controverted, can be rejected only with specific and legitimate reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830.

A review of the medical reports that were ignored by the ALJ reveal Defendant's suggestion that the opinions were incorporated into Plaintiff's RFC is wholly without merit.

**(1) Kari Heistand, M.D.**

Psychiatrist Kari Heistand, M.D., examined Plaintiff on August 24, 2010. Tr. 497-502. Dr. Heistand noted while Plaintiff presented a "diagnostic challenge," it was "clear" Plaintiff has signs of Post-Traumatic Stress Syndrome and major depression. Tr. 501. After an hour long examination, Dr. Heistand observed that Plaintiff's symptoms included, "poverty of thought, flat affect, amotivation, general decline in her ability to function over the years, [along with] hallucinations and paranoia that are present independent of immediate effects of substance intoxication and worsening of depression . . . ." Tr. 501.

Dr. Heistand agreed with Dr. Rodenberger that the "most reasonable" diagnoses were schizoaffective disorder and PTSD. Tr. 501. Finally, Dr. Heistand opined that Plaintiff was not capable of sustaining employment. "I do feel that due to the positive and negative symptoms of schizophrenia, PTSD that includes difficulty being around others and due to difficult to treat depression she is unlikely to be able to work enough to support herself through gainful employment." Tr. 501.

**(2) Phillip Rodenberger, M.D.**

Psychiatrist Phillip Rodenberger, M.D., examined Plaintiff on October 22, 2009. Tr. 628-30. Dr. Rodenberger noted that Plaintiff looked "much older than her stated age." Tr. 628. He observed Plaintiff as "sad, constricted, but not unpleasant appearance." Tr. 629. Dr. Rodenberger expressed wonder that Plaintiff's previous diagnoses consisted of "major depression and anxiety state" and failed to reflect a schizoaffective disorder:

> I'm not sure why this woman has not carried the schizophrenic or schizoaffective diagnosis, nor why she has not been on antipsychotic

> medications. She has very much the look of somebody who is chronically schizophrenic, and because of the mood disturbance, I have chosen to call her schizoaffective, although she could be regarded as chronic paranoid schizophrenia, or chronic undifferentiated schizophrenia. In any case, I think an antipsychotic medication is indicated.

Tr. 629-30. Dr. Rodenberger recommended Plaintiff begin taking risperidone, an antipsychotic drug. Tr. 629.

**(3) Kimberly Humann, M.D.**

Psychiatrist Kimberly Humann, M.D., examined Plaintiff on March 31, 2009, for ninety minutes. Tr. 651-53. Dr. Humann observed Plaintiff's mood as depressed and anxious, and her affect as congruent, "appears stressed and depressed." Tr. 652. Dr. Humann diagnosed Plaintiff with PTSD, chronic, and major depressive disorder, moderate, recurrent. Tr. 652. Dr. Humann concluded, "Patient meets criteria for severe complicated PTSD which is quite disabling." Tr. 653.

**(4) E.G. Tupper, M.D.**

On August 17, 2009, E.G. Tupper, a family practice physician, completed a Physical Evaluation form. Tr. 512-17. Dr. Tupper opined that Plaintiff's brain tumor and memory loss would result in the inability to perform "all work activities." Tr. 514. Dr. Tupper also assessed Plaintiff's overall work level as limited to "one hour" and the doctor noted that Plaintiff had "difficulty following orders; very limited strength." Tr. 514. Dr. Tupper also checked "sedentary" work level, but wrote a note that Plaintiff was weak, and could work only 1-2 hours. Tr. 514.

**(5) Mark B. Whitehill, Ph.D.**

Mark B. Whitehill, Ph.D., completed a Psychological/Psychiatric Evaluation of Plaintiff on October 11, 1996. Tr. 215-18. Dr. Whitehill assessed Plaintiff with severe impairments of depressed mood, global illness, and in several social factors.

Tr. 216-17. He also found Plaintiff had several marked cognitive impairments. Tr. 217. He recommended hospitalization for psychiatric evaluation, medication and participation in an abused women's group. Tr. 218.

**(6) Jay M. Toews, Ph.D.**

Plaintiff argues that the ALJ erred by failing to consider all the opinions from Jay M. Toews, Ph.D. ECF No. 21 at 16. Plaintiff asserts that the ALJ gave "great weight" to Dr. Toews' opinion. ECF No. 21 at 16. However a review of the ALJ's opinion reveals several paragraphs summarizing Dr. Toews' opinion, but no statement reflecting the weight the ALJ assigned to that opinion. Tr. 26-27.

Dr. Toews examined Plaintiff on August 30, 2008, and administered several objective medical tests. Tr. 487-95. Plaintiff's MMPI-2 test results were deemed "patently invalid." Tr. 490. Dr. Toews explained Plaintiff's clinical profile is most consistent with individuals who respond in a random manner without regard to item content. Tr. 490. "Usually these individuals are patently non-compliant, or are malingering." Tr. 490. He concluded, "[i]t is not possible to develop any clinical hypotheses from the MMPI-2 profile." Tr. 491. Dr. Toews observed that Plaintiff "did not appear to be motivated or interested in the examination," she had low average range of intelligence, and she appeared "clinically depressed." Tr. 490. Dr. Toews opined that Plaintiff would "not interact well with the general public, [and she] would have moderate to severe difficulties interacting with coworkers and supervisors." Tr. 490-91.

On September 22, 2008, Dr. Toews completed a check-the-box Medical Source Statement of Ability to Do Work-Related Activities (Mental). Tr. 493-95. In that form, Dr. Toews indicated that Plaintiff would have marked difficulty in both making judgments on complex work-related decisions and in interacting appropriately with the public. Tr. 493-94. Dr. Toews opined that Plaintiff would have between a moderate and marked difficulty in: (1) carrying out complex instructions; (2) understanding and remembering complex instructions; and (3)

interacting appropriately with co-workers. Tr. 493-94. Dr. Toews also assessed Plaintiff with moderate impairments in the ability to interact appropriately with supervisors and in the ability to respond appropriately to usual work situations and to changes in a routine work setting. Tr. 494.

While the ALJ discussed Dr. Toews' opinion, he failed to explicitly weigh the opinions, or provide reasons for rejecting the limitations assessed by Dr. Toews. Defendant responds that the ALJ simply, albeit silently, resolved the contradiction between the two evaluations and "appropriately relied upon the more reasoned opinion." ECF No. 23 at 14. The ALJ's decision "must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Barbato v. Comm'r of Soc. Sec.*, 923 F. Supp. 1273, 1276 n.2 (C.D. Cal. 1996). Notwithstanding the Defendant's offered *post hoc* rationalization, the ALJ provided no explanation for rejecting Dr. Toews' opinions related to Plaintiff's multiple moderate and marked limitations.

The record supports the Plaintiff's assertion that the ALJ erred by failing to address and properly credit several significant, probative medical opinions.

**C. Remedy**

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman*, 211 F.3d at 1178. The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the ALJ's decision. *Strauss*, 635 F3d at 1138.

Plaintiff argues that her subjective testimony, as well as the improperly rejected opinions discussed above, should be credited as true and the case should

be remanded for an immediate award of benefits.[3] ECF No. 21 at 9-14; 20. Defendant asserts remanding for an award of benefits is an inappropriate remedy because this "is not a case in which the evidence is so one-sided that the court can conclude there are no issues better resolved by the fact finder designated by law." ECF No. 23 at 20. Defendant misunderstands the "credit as true" doctrine.

Under the "credit as true" doctrine, evidence should be credited and an immediate award of benefits directed where "(1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Harman*, 211 F.3d at 1178, quoting *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). The "credit as true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F3d 871, 876 (9th Cir 2003), citing *Bunnell*, 947 F.2d at 348.

Significantly, the Ninth Circuit has also considered other factors in determining whether to employ the credit as true doctrine. *See Vasquez v. Astrue*, 572 F.3d 586, 593-594 (9th Cir. 2009). In *Vasquez*, despite outstanding issues related to whether the claimant was disabled, the Ninth Circuit exercised its discretion and directed the Commissioner to credit the claimant's testimony as true because the claimant was of advanced age (58 years old) and she had already experienced a "severe" delay (seven years) in her application. *Vasquez*, 572 F.3d

[3] As Plaintiff points out, ALJ Atkins failed to comply with the remand order from the Appeals Council. However, this court may not award benefits punitively and, thus, performs a "credit-as-true" analysis to determine if Plaintiff is disabled. *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F3d 1135, 1138 (9th Cir 2011).

at 593-94. The *Vasquez* court noted that "the purpose of the credit-as-true rule is to discourage ALJs from reaching a conclusion about a claimant's status first, and then attempting to justify it by ignoring any evidence in the record that suggests an opposite result." *Id.*, citing *Varney v. Sec'y of Health & Human Svcs,* 859 F.2d 1396, 1398 (9th Cir. 1988).

Plaintiff in this case is similarly situated to the *Vasquez* claimant: Plaintiff applied for benefits in July, 2005, more than eight years ago, and at present is 57 years old, which is deemed an "advanced age" under the regulations. 20 CFR § 404.1563(e )("We consider that at advanced age (age 55 or older), age significantly affects a person's ability to adjust to other work.")

The unusual circumstances presented in this case justify crediting as true the Plaintiff's subjective testimony, as well as the medical opinions from Kari Heistand, M.D., Phillip Rodenberger, M.D., Kimberly Humann, M.D., and E.G. Tupper, M.D.[4] *See Harman*, 211 F3d at 1179; *Smolen*, 80 F3d at 1281-83; *Varney v. Sec'y of Health & Human Servs.*, 859 F2d, 1396, 1398 (9th Cir 1988).

Moreover, this court finds that outstanding issues need not be resolved before a determination of disability can be made, and that the record is clear that the ALJ would be required to find Plaintiff disabled if the evidence is credited. The vocational expert at the first hearing indicated that if the hypothetical limitations included fatigue, discomfort, and unpredictable absences that could rise

---

[4]The ALJ erred by failing to address, and thus rejecting, the medical opinions listed above, save the opinion from Dr. Whitehall. The court notes that Dr. Whitehall's evaluation was conducted approximately eight years prior to Plaintiff's alleged onset date, and thus should not be considered in this application. See 20 C.F.R. § 416.912(d)(2) (SSA will develop medical history for "at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary.")

to the level of 4-8 hours per week, the Plaintiff could not sustain any substantial gainful employment. Tr. 774.

Because the evidence establishes that Plaintiff would be unable to maintain employment while managing her pain and fatigue, as well as her chronic schizoaffective disorder, remand for further administrative proceedings serves no useful purpose and is unwarranted. Remanding a disability claim for further proceedings can delay much needed income for claimants who are unable to work and are entitled to benefits, often subjecting them to "tremendous financial difficulties while awaiting the outcome of their appeals and proceedings on remand." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004), quoting *Varney*, 859 F.2d at 1398.

As the Ninth Circuit has pointed out, if valid grounds exist for rejecting evidence, "it is both reasonable and desirable to require the ALJ to articulate them in the original decision." *Harman*, 211 F.3d at 1179 (quoting *Varney v. Sec'y of Health and Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988)). The ALJ has reviewed this case on two separate occasions, two years apart. The ALJ failed to provide valid reasons for rejecting the testimony of Plaintiff's subjective complaints and the multiple medical opinions that indicate Plaintiff is disabled.

Considering the entire record, the court is persuaded that applying the credit as true rule and remanding for benefits is the proper course in this case. *See Varney*, 859 F.2d at 1399 (noting that it is within the Court's discretion to remand for an award of benefits and finding it appropriate when further proceedings would delay the receipt of benefits). To remand this matter to consider for a third time the medical opinions and Plaintiff's credibility would subject Plaintiff to a disability system of "heads we win; tails, let's play again." *Id*. (*quoting Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004)).

**CONCLUSION**

Having reviewed the record and the ALJ's findings, this court concludes the

ALJ's decision is not supported by substantial evidence and is based on legal error. Because no remaining issues exist that must be resolved and it is clear from the record that Plaintiff is entitled to disability benefits, the court **REMANDS** to the Commissioner of Social Security for an immediate award of benefits. Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 21**, is **GRANTED** and the matter is remanded to the Commissioner for an immediate award of benefits;

2. Defendant's Motion for Summary Judgment, **ECF No. 23**, is **DENIED**;

3. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff, and the file shall be CLOSED.

DATED November 26, 2013.



JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE